IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BARRY PEARSON**                                                                                     **PLAINTIFF**

**V.**                                      **NO. 4:20CV00298 DPM-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                      **DEFENDANT**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge D. Price Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction:

Plaintiff, Barry Pearson ("Pearson"), applied for disability benefits on June 2, 2017, alleging a disability onset date of January 7, 2016.[1] (Tr. at 10). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 20-21). The Appeals Council denied his request for review (Tr. at 1), and, therefore, the ALJ's decision now stands as the final decision of the Commissioner. Pearson has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

### II. The Commissioner's Decision:

The ALJ found that Pearson had not engaged in substantial gainful activity since the amended alleged onset date of March 15, 2016. (Tr. at 12). At Step Two, the ALJ found that

---

[1] Pearson subsequently amended his alleged onset date to March 15, 2016. (Tr. at 10, 39-40).

Pearson had the following severe impairments: exudative peripheral retinopathy in the right eye; rheumatoid arthritis, unspecified; and degenerative disc disease, status/post L5-S1 discectomy. *Id.*

After finding that Pearson's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Pearson had the residual functional capacity ("RFC") to perform work at the light exertional level, except that he could only occasionally climb, crouch, stoop, kneel, and crawl, and he should not do commercial driving due to poor vision in the right eye. *Id.*

The ALJ determined that Pearson is capable of performing past relevant work as a purchase agent. (Tr. at 19). The ALJ made an alternative finding at Step Five; relying upon the testimony of the Vocational Expert ("VE"), the ALJ found that, based on Pearson's age, education, work experience and RFC, jobs existed in the national economy which he could perform. (Tr. at 20-21). Therefore, the ALJ found that Pearson was not disabled. *Id.*

### III. **Discussion**:

    A.   Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Pearson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Pearson's Arguments on Appeal

Pearson argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that: (1) the ALJ should have found that Pearson met Listing 1.04(A); and (2) the ALJ's analysis of subjective complaints was insufficient. See *Adult Listing of Impairments*, 20 C.F.R Part 404, Subpart P, Appendix 1. The Court finds support for Pearson's Listings argument.

Pearson's main complaint was back pain that radiated into his legs. He failed conservative treatment, such as medication management, steroid injections and physical therapy (therapy results were mixed, as Pearson improved at times, but his pain returned). (Tr. at 49-54, 403). He also saw a chiropractor and used a TENS unit on his back. *Id*. Pearson's pain warranted a discectomy in 2018, but even after that, one neurosurgeon found severe neural foramina stenosis and significant degenerative changes. (Tr. at 368-369, 511).

Pearson underwent three lumbar MRIs. They showed: disc extrusion, abutment of the exiting right L5 nerve, compression of the descending right S1 nerve, retrolisthesis, annular tear, facet hypertrophy, broad-based disc displacement, and right-sided hemilaminectomy defect. (Tr. at 355, 371, 506). Even after the surgery, MRIs and x-rays showed severe conditions. (Tr. at 511).

Clinical examinations revealed muscle spasm, muscle weakness, limited range of motion, and sensory or reflex loss. (Tr. at 373-378, 406-463, 501-503). Notably, multiple providers found Pearson had positive straight-leg raise testing. (Tr. at 413-460, 501). At a physical therapy appointment in November 2018, Pearson was unable to perform 10 minutes of lumbar traction and nerve glides. (Tr. at 454). Pearson said he was limited in his daily activities and had to lie down three times a day. (Tr. at 40-54).

Pearson alleges that the ALJ did not sufficiently support his decision that Pearson did not meet Listing 1.04. The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). That is, if an adult is not actually working and his impairment matches or is equivalent to a Listing he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*. An ALJ's failure to address a specific Listing or to elaborate on his conclusion that a claimant's impairments do not meet the Listings is not reversible error if the record supports the conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

The ALJ stated the following at Step Three in his Listings analysis (citing the criteria of Listing 1.04):

> The claimant's degenerative disc disease, status/post L5-S1 discectomy, does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitations of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and if there is involvement in the lower back, positive straight-leg raising; or (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication.

(Tr. at 14).[2] That was the extent of the ALJ's finding regarding Listing 1.04.

Pearson suggests that all of the criteria of Listing 1.04(A) were met. (Doc. No. 13 at 12). He alleges the record shows nerve root compromise; limitation in motion of the spine; motor,

---

[2] The Social Security Administration updated the Listings definitions for musculoskeletal disorders, effective for claims filed on or after April 2, 2021. 85 Fed. Reg. 78164; 20 C.F.R. § 404; https://www.federalregister.gov/documents/2020/12/03/2020-25250/revised-medical-criteria-for-evaluating-musculoskeletal-disorders. The ALJ properly cited to the Listing for 1.04 in effect at the time.

sensory, and reflex loss; and positive straight-leg raise. Because the ALJ's Listings analysis was limited to one sentence (above), with no elaboration or citation to medical records, the Court cannot make an informed determination about whether the criteria of Listing 1.04(A) were, in fact, met. In short, the ALJ in this case has not "shown his work." *Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 *11-12 (W.D. Mo. Jan. 14, 2019)(an ALJ must give good reasons for his factual findings; he must "show his work").

It is paramount that an ALJ explain his Listings conclusion when the record contains evidence matching a Listing's criteria. "A lack of explanation why an impairment fails to equal medically a Listing impairment may frustrate meaningful judicial review when the record contains evidence of symptoms that might equal, in severity and duration, **some or all of the criteria** of a listed impairment." *Adams v. Saul*, No. 5:19-CV-00057-FL, 2020 U.S. Dist. LEXIS 38978, 2020 WL 1042144, at *8-9 (E.D.N.C. Jan. 30, 2020)(emphasis added). If the record overall supports an ALJ's Listings decision, the ALJ has not erred even if he fails to sufficiently explain his findings; on the other hand, in the event that there is evidence supporting a claimant's Listings claim, the ALJ must show his work. *See Phillip v. Saul*, 2020 U.S. Dist. LEXIS 124116 at *61-63 (D. Neb. July 15, 2020)(reversal required where ALJ's Step Three finding was perfunctory at best).[3] Remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit the Court to conclude that substantial evidence supports the Commissioner's decision. *See Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir.2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). A one-

---

[3] Pearson properly points out in his Reply Brief that the red herring argument by the Defendant about whether the straight-leg raise tests were done in sitting or supine positions simply highlights the need for further explanation by the ALJ in the Listings section of the hearing decision. (Doc. No. 18).

sentence Step Three finding by the ALJ does not suffice. *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015)(two-sentence Listings analysis (of Listing 1.04) is insufficient).

While the argument was not raised by Pearson, the Court additionally considers, as part of the Listings argument, whether the record was fully developed. The *Phillip* court found that in the face of some evidence that a Listing has been met, an ALJ should obtain a medical opinion pertaining to the Listing criteria. *Phillip*, 2020 U.S. Dist. LEXIS 124116 at *62. The ALJ did not obtain such an opinion here, or order a consultative examination, in spite of evidence suggesting Pearson met the Listings requirements. In the case at bar, there was considerable evidence in the record as a whole contradicting the ALJ's opinion, which means a consultative examination should have been obtained.

### IV.   Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to conduct a proper Listings analysis.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review, including a more fulsome Step Three analysis and the completion of a consultative examination, if deemed necessary.

DATED this 16th day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE